**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NERY SANTIAGO, | : | |
| | : | Civil No. 05-4552 (JBS) |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| WARDEN JOHN NASH, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

    NERY SANTIAGO, Petitioner <u>pro</u> <u>se</u>
    #40417-018
    F.C.I. Fort Dix
    West Compound, P.O. Box 7000
    Fort Dix, New Jersey 08640

    JOHN ANDREW RUYMANN, AUSA
    United States Attorney's Office
    402 East State Street, Suite 430
    Trenton, New Jersey 08608
    Counsel for Respondent

**SIMANDLE, District Judge:**

    This matter is before the Court on petitioner Nery Santiago's ("Santiago") application for habeas corpus relief under 28 U.S.C. § 2241, challenging the prison disciplinary proceedings and sanctions imposed upon him, which resulted in the his disciplinary segregation and loss of good conduct time. Santiago seeks expungement of the disciplinary finding and restoration of his good conduct time.

The named respondent, Warden Nash at FCI Fort Dix, filed an answer to the petition on or about April 27, 2006.  Petitioner filed objections to the answer on May 16, 2006.  The Court has reviewed all documents submitted and, for reasons now discussed, will deny this petition for lack of merit.

BACKGROUND

At the time the alleged disciplinary infraction occurred, Santiago was confined at FCI Fort Dix in Fort Dix, New Jersey, serving a 77-month prison term following his conviction for transferring false U.S. identification documents, in violation of 18 U.S.C. § 1028(a)(2) and (b)(1)(A), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and (a)(2).  Santiago's projected release date is May 21, 2008.

On December 22, 2004, Santiago received an incident report charging him with the prohibited conduct of possessing a hazardous tool and conduct which disrupts the orderly running of the prison, in violation of Codes 108 and 299.  Senior Officer R. Reynolds reported the incident as follows:

> At approximately 1055 am, I was conducting a routine shakedown of Room 322, bunk 2L.  Inmate Santiago #40417-018 is assigned to this bunk.  As I was searching along the bed frame a tattoo gun needle that was taped to the frame of his bed punctured my leather search glove and went into my palm, puncturing the skin just below my right finger.

(Respondent's Answer at Declaration of Nicole M. Ahmed, Exhibit B, Incident Report).

Santiago was provided a copy of the Incident Report on December 22, 2004, as indicated on Blocks 14 to 16 of the report. (Ahmed Decl. at Ex. B).  The Incident Report further shows that Santiago spoke with the investigating officer and told him that he was not aware of the tattoo needle and was innocent of the charges.  However, the investigating officer found the charges against Santiago to be valid, and Santiago was placed in administrative detention before his hearing with the Unit Disciplinary Committee ("UDC").  (Ahmed Decl. at Ex. B, Incident Report, blocks 24, 26, 27).

Santiago denied the charges against him at the UDC hearing; however, the UDC referred the matter to a Disciplinary Hearing Officer ("DHO") on December 28, 2004 because of the seriousness of the charges.  (Id., Incident Report at blocks 17, 19).

An initial DHO hearing was held on January 3, 2005, but postponed after Santiago claimed he had not received a copy of the Incident Report.  A copy was provided to petitioner giving him notice of the charges, and a hearing was rescheduled for January 6, 2005.  Prior to the hearing, Santiago was informed of his rights and a staff representative was appointed for him.  The staff representative appeared on Santiago's behalf at the January 6, 2005 hearing.  Santiago did not request any witnesses.  (Ahmed Decl. at Ex. B, DHO Report at Parts I, II, III and V).

Santiago stated at his January 6, 2005 hearing that he did not know anything about the tattoo needle or that it was taped to his bunk. The DHO considered petitioner's statement, three photographs showing the needle, Senior Officer Reynolds' hand and glove, and a medical report regarding Reynolds' injury caused by the tattoo needle. The DHO concluded that Santiago committed the acts as charged, basing his decision on the weight of the evidence provided at the hearing. In particular, the DHO found that Santiago's conduct was "consistent with Code 108A; Possession of a Hazardous Tool (Aiding), and Code 229; Conduct which disrupts the Security and Orderly running of the Institution most like Code 224; Assault." For the Code 108A violation, the DHO imposed sanctions including a 60-day disciplinary segregation, 40 days disallowance of good conduct time ("GCT") and 108 days forfeiture of non-vested GCT. On the Code 229 violation, the DHO imposed a 30-day disciplinary segregation, 27 days disallowance of GCT and 54 days forfeiture of non-vested GCT. The DHO Report advised Santiago of his right to file an administrative appeal within 20 days of the decision. (Ahmed Decl., Ex. B at DHO Report, Parts III-VIII).

There is no dispute that Santiago exhausted his administrative remedies as provided under the Administrative Remedy Procedure. (Ahmed Decl. at Exs. C & D).

II.  CLAIMS PRESENTED

Santiago claims that the DHO's decision was not supported by sufficient evidence, and that he was denied due process because the Bureau of Prisons failed to conduct an investigation as to petitioner's involvement in the prohibited conduct charged, witnesses were not made available to petitioner, and there were errors in the reports concerning the incident.  Santiago seeks to have the charges and sanctions expunged.

III.  DISCUSSION

A.  Standard of Review

Santiago seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.   <u>Applicable Regulations</u>

The Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 <u>et</u> <u>seq</u>.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because it was designated as a high category offense and the UDC does not have the authority to disallow good conduct time.  Disallowance of good conduct time credits for high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the

DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d).  The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. § 541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

C.  Merits of Petitioner's Claims

1.  *Procedural Due Process Claims*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S.

CONST. amend. XIV.  In Wolff v. McDonnell, supra, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).

Here, Santiago asserts that he was not given the opportunity to call witnesses at his DHO hearing, that the BOP failed to conduct an investigation of the charges, and that there were errors in the reporting of the incident.  This Court finds these claims to be meritless.

First, the DHO Report clearly shows that Santiago declined to call witnesses at his hearing, and that he was informed of the evidence considered by the DHO.  Thus, there was no deprivation of discovery or petitioner's opportunity to present evidence. Further, Santiago's argument that he was denied discovery in

8

violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and was denied confrontation with witnesses in violation of <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) is misplaced.  These cases involve issues of constitutional rights afforded to criminal defendants during their criminal trial proceedings and are not applicable to institutional disciplinary proceedings.  In <u>Wolff</u>, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  <u>Id</u>. at 556-57; <u>Young v. Kann</u>, 926 F.2d 1396, 1399 (3d Cir. 1991).

     Second, contrary to Santiago's assertion that no investigation was conducted, the record shows that an investigation was performed by the investigating Lieutenant before the UDC, who concluded that the charges against Santiago were valid.  This investigation included the reporting officer's account and petitioner's statement claiming no knowledge of the tattoo needle.  Consequently, there is no factual basis for this claim by petitioner that an investigation was not undertaken.  Rather, it appears that his claim is based on his dissatisfaction with the investigating officer's conclusions, which did not find petitioner's protest of innocence to be credible.

Third, the errors referenced by Santiago are simply typographical mistakes regarding dates when petitioner received notice of the charges, the date the DHO report was delivered to Santiago, and the date of the incident as reflected in the response to Santiago's administrative appeal.[1]  These errors do not rise to the level of constitutional dimension and do not tend to show that petitioner was denied due process.

Finally, the sanctions imposed against Santiago are within the maximum penalties authorized for the high severity level offenses charged.  See 28 C.F.R. § 541.13, Tables 3 and 4. Therefore, the Court finds that Santiago's claim asserting denial of due process is without merit, and habeas relief will be denied accordingly.

2.   *There Was Sufficiency of Evidence to Support the Charge*

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record."

---

[1]  The first error is on the DHO Report listing December 20, 2004 as the date Santiago was advised of his rights, which is before the incident occurred on December 22, 2004.  The second error also is on the DHO Report, which states that the report was delivered to Santiago on January 10, 2005.  On the same page of the report, it indicates that a "copy was given to inmate 2/17/05."  Finally, the BOP's response to Santiago's BP-11 appeal lists the incident date as September 22, 2004.  The Court finds all of these errors in dates to be inconsequential or simple typographical errors that do not amount to a constitutional deprivation.  Petitioner does not allege, for example, that the BOP has confused his incident with some other one.

10

Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991). The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 (internal citations omitted). Moreover, the Court stated: "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Id. at 457.

Here, there is sufficient evidence noted by the DHO in reaching his determination. The DHO's Report demonstrates that, after an investigation and the DHO's consideration of all the relevant evidence, the DHO found that the greater weight of evidence supported a finding that Santiago did commit the prohibited acts in violation of Code 108A and 299. The DHO's determination clearly took into account Santiago's claims of innocence, but rejected petitioner's explanation as follows:

11

> Although you claim you didn't know anything about the needle
> or it being taped to your bunk, I determined you have every
> reason to make that assertion in an effort to have the
> charges against you expunged.  I did determine the employee
> to be credible concerning this matter as you did not dispute
> the fact that bed 2L was yours, or the fact that the needle
> was taped to your bunk, you just stated , you didn't know it
> was there.  Additionally, you are responsible to ensure your
> assigned area remains contraband free.

(Ahmed Decl., Ex. B, DHO Report at Block V).  Thus, the DHO's Report plainly shows that it was "not so devoid of evidence that the findings of the [DHO were] without support or otherwise arbitrary."  Hill, 472 U.S. at 457.

Santiago's arguments in his petition are merely another rendition of his innocence rejected by the DHO as self-serving. The DHO apparently attached more weight to the confirmed facts that (1) Santiago admitted the bunk where the needle was found was his bunk, and (2) Santiago has a duty to keep his area contraband free, in contrast to Santiago's unestablished claims that he was a "newcomer" at the time of the incident, who would have had difficulty obtaining the tattoo needle, or had health limitations to actually use the tattoo needle for tattoo art.

Therefore, based upon this evidence as relied upon by the DHO, and without any contradictory evidence submitted by petitioner, except his self-serving denial of the prohibited acts charged, the Court finds that Santiago's right to due process was not violated by the determination of the DHO.  The procedures enunciated in Wolff, supra, were complied with, and there was

"some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt.  See Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting Hill, 472 U.S. at 457).

Therefore, there is no basis to expunge the incident report and sanctions imposed because Santiago does not prove that he was denied due process or that there was insufficient evidence to support the disciplinary finding.  Accordingly, the habeas petition will be denied for lack of merit.

## CONCLUSION

Based upon the foregoing, Santiago's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, will be denied.  An appropriate Order accompanies this Opinion.


s/ Jerome B. Simandle
JEROME B. SIMANDLE
U.S. District Judge

Dated:    **September 20, 2006**

13